# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br>vs.<br>TYRELL JARULE GASTON,<br>            Defendant. | Case No. 22-cr-44-CJW<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I. INTRODUCTION

On January 25, 2023, the Grand Jury charged Defendant Tyrell Jarule Gaston with one count of Possession of Ammunition by a Felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2). (Doc. 9.)

The matter before me is Defendant's motion to suppress. (Doc. 20.) The motion contained an inventory of items to be suppressed which includes the following: Black 9mm P80 firearm, all firearm magazines, and all ammunition found in Mr. Gaston's vehicle pursuant to a search conducted on April 29, 2022; Hy-Vee prescription bottle with name "Tyrell Gaston" containing ibuprofen pills; medical gauze, tape and wrap; yellow T-shirt and brown pants; Best Western key card; and book entitled "Blood of a Boss 4," all found in a backpack in Mr. Gaston's vehicle pursuant to a search conducted on April 29, 2022. (Doc. 20.) The Government timely filed a response. (Doc. 23.) The Honorable C.J. Williams, United States District Court Judge, referred the motion to me for a Report and Recommendation. I held a hearing on Defendant's motion to suppress on March 23, 2023. (Doc. 27.)

1

The motion arises from a vehicle search following Defendant's arrest for violation of the terms of his State of Iowa probation.

At the hearing, the following Government exhibits were admitted without objection and filed at Doc. 23:

1. Complaint (FECR case filed March 19, 2020) in Iowa District Court for Linn County;
2. Deferred judgment in Iowa District Court for Linn County case no. FECR135501 filed September 22, 2021;
3. Sixth Judicial District Department of Correctional Services probation agreement dated October 12, 2021, with additional condition dated December 14, 2021;
4. Complaint (AGCR filed November 8, 2021) in Iowa District Court for Linn County;
5. Complaint in Iowa District Court for Linn County case no. FECR142837 filed November 9, 2021;
6. Judicial District Department of Correctional Services report of violation dated November 9, 2021;
7. Judicial District Department of Correctional Services report of violation addendum dated March 14, 2022;
8. Judicial District Department of Correctional Services report of violation addendum dated April 29, 2022; and
9. Judicial District Department of Correctional Services report of violation titled Pre-Trial Report of Violation filed April 29, 2022.

Defendant seeks to suppress all evidence found in the search of his vehicle and backpack on April 29, 2022, including the Black 9mm P80 firearm, all firearm magazines, all ammunition, and various personal items found in the backpack. (Doc.20.)

2

At the hearing, the following defense exhibits were admitted without objection:

A. Sixth Judicial District Department of Correctional Services complaint report dated April 29, 2022 (Doc. 21);

B. Sixth Judicial District Department of Correctional Services probation agreement dated October 12, 2021, with additional condition dated December 14, 2021 (Doc. 21); and

C. Disposition in Iowa District Court for Linn County case no. AGCR142819 filed and dated May 18, 2022 (Doc. 26).

The Government called two witnesses: Michael Stransky, Probation Officer for the Sixth Judicial District and Steven Warner, High Risk Unit Officer for the Sixth Judicial District. I found all witnesses credible. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

On March 19, 2020, a Complaint was filed against Defendant in the Iowa District Court for Linn County, charging Defendant with first degree robbery (Count 1), conspiracy to deliver marijuana (Count 2), carrying weapons (Count 3), and obstructing prosecution (Count 4). (Gov. Exhibit 1.) The charges stemmed from a shooting that occurred on January 24, 2020. Defendant and Andrew Gaston, Defendant's cousin, made plans to rob marijuana from a drug dealer, Kyler Carson. Defendant and Andrew Gaston, along with assistance from others, arranged to meet Carson in a parking lot, where Carson expected to sell forty-five pre-rolled tubes of marijuana for $900. While Carson was engaged in selling the marijuana to other individuals, Defendant, Andrew Gaston, and a third individual ambushed Carson from behind. Andrew Gaston struck Carson in the back of the head with a metal object. Carson turned and exchanged gunfire with Defendant before fleeing the scene. Andrew Gaston was shot in the chest and died.

3

Defendant was shot in the ankle. Both Carson and Defendant discarded their firearms which were not recovered by law enforcement. (*Id.* at 2.)

On September 21, 2021, Defendant was sentenced on the March 2020 charges and received a deferred judgment to a previously entered guilty plea to the lesser included offense charged in Count 1 of the Complaint, second degree robbery. (Gov. Exhibit 2 at 1.) Defendant was placed on probation under the supervision of the Sixth Judicial District until September 21, 2024. (*Id.* at 2.)

On October 12, 2021, Defendant signed a "Probation Agreement" which set forth multiple conditions he was required to follow while on probation. (Gov. Exhibit 3.) Among other conditions, Defendant affirmed that he understood and agreed that his "person, property, place of residence, vehicle and personal effects may be searched at any time, with or without a search warrant or warrant of arrest, by any probation officer having reasonable grounds to believe contraband is present." (*Id.* at 1.)

On November 8, 2021, a Complaint was filed against Defendant in the Iowa District Court for Linn County, charging Defendant with first degree harassment (Count 1) and fifth degree criminal mischief (Count 2). (Gov. Exhibit 4.) According to the Complaint, on November 7, 2021, the victim reported to law enforcement that, during an argument regarding child visitation, Defendant pointed a gun at her and threatened to assault her with it. Other witnesses observed Defendant brandish the gun, rack the slide, and break a window at the residence. Later, law enforcement located a black Ruger handgun in the vehicle Defendant used to leave the scene. (*Id.* at 1.)

On November 9, 2021, a Complaint was filed against Defendant in the Iowa District Court for Linn County, charging Defendant with attempted murder (Counts 1 and 2), intimidation with a dangerous weapon (Count 3), and going armed with intent (Count 4). (Gov. Exhibit 5.) The Complaint alleged that, on November 2, 2021, while Cornelius Gaston, Defendant's uncle, was dropping Nickolas Palmer off at Palmer's

4

residence, Defendant and Earnest Gaston, Defendant's father, pulled up in a vehicle and stopped. Cornelius Gaston told law enforcement that he heard Earnest Gaston yell, "kill his ass." (*Id.* at 2.) Defendant exited the vehicle and opened fire on Cornelius Gaston and Palmer. Investigators found nine shell casings at the scene and observed a bullet hole in the vehicle driven by Cornelius Gaston. (*Id.*)

Defendant was held in custody until December 7, 2021, when he posted a $55,000 surety bond on the November 8 and 9, 2021 charges. (Gov. Exhibit 7 at 2.) On December 14, 2021, Michael Stransky, State Probation Officer for Iowa's Sixth Judicial District Department of Correctional Services, took over Defendant's probation supervision.

On April 29, 2022, Officer Stransky received an email from a Cedar Rapids Police Department ("CRPD") criminal analyst, who, in connection with a shooting that occurred on April 10, 2022, was reviewing surveillance footage from cameras at the Taboo Nightclub in Cedar Rapids and observed Defendant at the nightclub in the bar area and on the dance floor at approximately 11:30 p.m. on April 9, 2022. (Stransky Hr'g Test. at 9.) Officer Stransky reviewed the photos attached to the email sent by the CRPD and confirmed that Defendant was at the bar at 11:30 p.m., which was past his 10:30 p.m. curfew. Officer Stransky determined that both being at the bar and being out past his curfew were probation violations which necessitated Defendant's arrest. (*Id.* at 10-11.) There was no information that Defendant was a suspect in the nightclub shooting, that Defendant was armed, or drinking while present there. (*Id.* at 17.) Officer Stransky contacted the High Risk Unit to assist with taking Defendant into custody. (*Id.* at 11.)

5

High Risk Unit Officer Steven Warner was instrumental in Defendant's arrest on April 29, 2022.[1] Officer Warner went to Officer Stranksy's office, where Defendant had already arrived. Officer Warner informed Defendant that he was being placed under arrest for probation violations. Defendant was searched incident to arrest. As part of the pat down search, Officer Warner learned that Defendant had an injury to his back. Defendant explained that he had a cyst removed from his back which required his back to be bandaged up. Officer Warner also found a set of keys to Defendant's truck in Defendant's pocket. (Warner Hr'g Test. at 30-31.)

Officer Warner testified that, because Defendant was cooperative and had driven himself to the probation office, he gave Defendant the opportunity to make arrangements for a family member or friend to pick up the truck. (*Id.* at 31.) Officer Warner also asked Defendant whether there was anything in the truck that would get him into trouble. Defendant immediately answered "No," but stated that there was a backpack in the truck that belonged to his brother. (*Id.* at 31-32.) Officer Warner testified that Defendant's immediate response suggested to him that Defendant wanted to distance himself from the backpack and gave Officer Warner reason to believe that there was something in the backpack that Defendant did not want found. (*Id.* at 32.) Based on his experience as a High Risk Unit officer and his 30 years of probation experience, Officer Warner determined that based on the probation agreement, which provided that, among other things, Defendant's vehicle could be searched without a search warrant, and Defendant's response regarding the backpack, he was going to search the truck.[2] (*Id.* at 32-33, 35.)

---

[1] Officer Warner has been a probation officer for Iowa's Sixth Judicial District Department of Correctional Services for 31 years and has been a High Risk Unit Officer for 20 years. He is a graduate of the Iowa Law Enforcement Academy.
[2] Officer Warner also testified that he was aware that Defendant was on probation for a robbery charge involving firearms, and where a death occurred. Officer Warner also stated that Officer Stransky told him that Defendant was on pretrial release for attempted murder and that Defendant had allegedly "shot up" a vehicle. (Warner Hr'g Test. at 35.)

Officer Stransky also testified to law enforcement's determination to search Defendant's truck. Officer Stransky indicated that both he and Officer Warner determined it was appropriate to search Defendant's truck based on Defendant's probation violations and criminal history involving firearms.³ (Stransky Hr'g Test. at 23-24.) Specifically, Officer Stransky stated that, "When we went out to the vehicle, our intention was to search the vehicle. If it would have had a backpack in it or whatever was in it, we intended to search the vehicle under the circumstances." (*Id.* at 28.) Further, Officer Stransky indicated that whether or not Defendant had mentioned the backpack in the truck, the vehicle would have been searched. (*Id.*)

Prior to searching the vehicle, Officer Warner ran the truck's license plate and confirmed that Defendant was the owner of the truck. Officer Warner unlocked the vehicle and found the backpack sitting on the front passenger seat. Inside the backpack, Officer Warner found a pair of pants, a shirt, prescription ibuprofen prescribed to Defendant, bandages consistent with the bandages on Defendant's back, a book, a hotel room card, and a 9mm handgun with a loaded extended magazine. (*Id.* at 33-34.)

### III. DISCUSSION

#### A. *Parties' Arguments*

Defendant argues that the officers had no reasonable suspicion that he was engaged in criminal activity and had no reasonable grounds to believe that he had contraband in his truck to justify searching his vehicle. (Doc. 20-1 at 4.) Defendant maintains that "[a] violation of curfew does not give rise to an inference that [he] possessed any type of

---

³ In his testimony, Officer Warner stated that he made no decision to search Defendant's truck until he found the keys to the truck in Defendant's pocket. (Warner Hr'g Test. at 36.) Officer Warner futher testified that, upon finding the keys, he asked Defendant several questions, including whether there was anything in the truck that would get him in trouble and Defendant's quick response that the backpack in the truck belonged to his brother was red flag to him that he needed to search the vehicle. (*Id.* at 39.)

7

contraband or that he committed a crime." (*Id.*)  Thus, Defendant asserts that "[s]ince the search was not justified under the 'probation exception,' it was a violation of [his] Constitutional rights for his vehicle to be searched without a warrant." (*Id.* at 4-5.)

The Government argues that officers had reasonable suspicion to search Defendant's truck. (Doc. 23-1 at 7.)  Specifically, the Government argues that, "[b]ased on [D]efendant's presence at the nightclub shooting, history with firearms, missed probation appointments, and his statements and condition at the probation office, officers had a reasonable and objective basis for suspecting that [D]efendant violated the conditions of his probation and was engaged in further criminal activity. (*Id.* at 8.)

## B.   *Relevant Law*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *United States v. Rodriquez*, 829 F.3d 960, 961 (8th Cir. 2016) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)). A warrantless search subject to a condition of probation is such an exception. *See United States v. Knights*, 534 U.S. 112, 121-22 (2001).

"The Supreme Court has long held that a probationer has limited Fourth Amendment rights because of a diminished expectation of privacy." *Ryno v. City of Waynesville*, 58 F.4th 995, 1007 (8th Cir. 2023) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987)).  "[T]he 'touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."'" *Id.* (quoting *Knights*, 534 U.S. at 118-19, in turn quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).  An individual's "status as a probationer subject to a search condition informs

8

both sides of that balance." *Knights*, 534 U.S. at 119. "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id*. (quotations omitted). "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id*. Thus, "[a]n individual subject to a court-ordered search condition retains a 'significantly diminished . . . reasonable expectation of privacy.'" *United States v. Kuhnel*, 25 F.4th 559, 564 (8th Cir. 2022) (quoting *Knights*, 534 U.S. at 120); *see also United States v. Brown*, 346 F.3d 808, 811 (8th Cir. 2003) ("[W]hen a probationer consents to a search condition, his already-reduced reasonable expectation of privacy diminishes significantly.").

"When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *United States v. McCoy*, 847 F.3d 601, 605 (8th Cir. 2017) (quoting *Knights*, 534 U.S. at 121); *see also Brown*, 346 F.3d at 811 ("[W]hen a probationer is subject to a probationary search condition, the Fourth Amendment permits an officer to search pursuant to that condition without a warrant based only upon that officer's reasonable suspicion that the probationer is violating his probation's terms."). In determining reasonable suspicion, a probation officer may consider: (1) the detail and consistency of information suggesting the presence of contraband; (2) information provided by the probationer relevant to whether he or she possesses contraband; and (3) the probation officer's experience with the probationer or experience in a similar circumstance. *McCoy*, 847 F.3d at 605 (citing *Griffin*, 483 U.S. at 878-79). "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer

9

at the time, the officer has a particularized and objective basis for suspecting wrongdoing." *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010).

I note that the language of probation agreement refers to "reasonable grounds to believe contraband is present." (Def. Exhibit A.) Neither party has asserted that "reasonable grounds" means anything more or less than "reasonable suspicion," as the latter term is frequently used in cases cited by both parties.

## C.     Analysis

Defendant was aware that he was subject to a condition of probation that his property and vehicle could be searched without a warrant based on a probation officer's reasonable belief that contraband was present. (Gov. Exhibit 3.) *See Brown*, 346 F.3d at 811 (providing that a probationer who consents to a search condition, has his or her already-reduced reasonable expectation of privacy diminished significantly). When officers decided to search Defendant's truck and the backpack located inside the truck, they had knowledge of Defendant's prior criminal history involving firearms. (Warner Hr'g Test. at 35; Stransky Hr'g Test. at 23-24.) Specifically, at the time of the search, Defendant was on probation for a robbery charge where firearms were involved, gunfire was exchanged, and a death occurred. (Warner Hr'g Test. at 35; Stransky Hr'g Test. at 23; Gov. Exhibit 1.) Defendant was also on pretrial release for attempted murder involving multiple shots fired at a vehicle. (Warner Hr'g Test. at 35; Stransky Hr'g Test. at 23; Gov. Exhibit 5.) Additionally, Defendant was on pretrial release for first degree harassment, which involved brandishing a firearm at the victim and threatening to assault her with it. (Stransky Hr'g Test. at 23; Gov. Exhibit 4.) Further, the reason for Defendant's arrest on April 29, 2022 stemmed from a probation violation on April 9, 2022. On that date, Defendant was observed at a bar past his curfew. Defendant was also under-age to be at a bar past 10:00 p.m. Additionally, on the early morning hours

10

of April 10, 2022, a shooting occurred at the bar where Defendant was observed past his curfew. (Stransky Hr'g Test. at 9-11; Gov. Exhibit 8.)

On April 29, 2022, when Defendant was arrested, he was searched incident to arrest. Officer Warner performed a pat down search and found a set of keys to Defendant's truck in his front pocket and learned that Defendant had a back injury from the removal of a cyst that was wrapped in bandages. (Warner Hr'g Test. at 31.) Based on finding the keys to Defendant's truck, Officer Warner asked Defendant whether there was anything in the truck that would get him into trouble. Defendant immediately answered "No," and stated that there was a backpack in the truck that belonged to his brother. (*Id.* at 31-32.) Officer Warner testified that Defendant's immediate response suggested to him that Defendant wanted to distance himself from the backpack and gave Officer Warner reason to believe that there was something in the backpack that Defendant did not want found. (*Id.* at 32.)

The witnesses' testimony is not entirely consistent regarding who made the decision to search and when the decision was made. Officer Stransky testified the decision to search was jointly made by both officers. Officer Stransky appeared unaware of how Defendant's statements distancing himself from the backpack may have influenced the decision to search the vehicle. I find Officer Warner's explanation of the decision-making process more consistent with the evidence, including the roles of the officers. Officer Stransky testified he was "present in the office when he was talking to him, and I was standing outside when he was talking to him." (Stransky Hr'g Test. at 11-12.) Officer Stransky further testified, "I was standing back while uniform officers began the search. And towards the end, when they found the firearm, I helped finish the search." (*Id.* at 23.) Thus, after his arrival, Officer Warner seems to have taken the lead in questioning Defendant, making the decision to search the vehicle, and in conducting the search itself. (Warner Hr'g Test at 36.) I find all of this consistent with Officer Warner's

11

testimony that he made the decision to institute the search based on his assessment there was reasonable grounds to believe contraband was present after he located Defendant's key fob and heard Defendant's statement attempting to disassociate himself from the backpack.

Based on all of the foregoing, Officer Warner's 30 years' experience as a probation officer, including 20 years' experience as a High Risk Unit officer, and the totality of the circumstances known to Officer Warner at the time of the search, I find that Officer Warner had reasonable grounds to believe contraband would be present in the vehicle.[4] *See McCoy*, 847 F.3d at 605 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable"); *Rodriquez*, 829 F.3d at 962 ("[T]he Fourth Amendment required no more than reasonable suspicion that Rodriquez was engaging in criminal activity or otherwise violating the terms of his probation to justify the warrantless search of his vehicle, regardless of the subjective motivation for the search") (quotation omitted); *Hamilton*, 591 F.3d at 1022 ("Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing."). To the extent that Officer Stranksy testimony indicated that he did not consider the backpack in making is determination that Defendant's truck should be searched, Officer Stransky's lack of consideration of the backpack is not fatal to the finding of reasonable suspicion.

---

[4] While Defendant told Officer Warner that the backpack belonged to his brother. The parties agree and all the evidence points to the backpack belonging to Defendant. (Doc. 20-1 at 3.) In particular, a prescription bottle of ibuprofen prescribed to Defendant and bandages consistent with the bandages wrapped on Defendant's back were found in the backpack. Additionally, officers confirmed that the truck was registered to Defendant and Defendant arrived at the probation office in the truck by himself.

*See United States v. Edwards*, 891 F.3d 708, 711-12 (8th Cir. 2018) (providing that "probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication") (quoting *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993))). Thus, Officer Warner's perception of Defendant's attempt to distance himself from the backpack is reasonable to include in the assessment of "reasonable grounds" for the search.

Accordingly, I recommend that the Court find that the search of Defendant's vehicle and backpack was lawful under the probation-search exception and Defendant's motion be denied.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress. **(Doc. 20.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 6th day of April, 2023.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa