**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-CR-44-CJW-MAR |
| Plaintiff, | **ORDER** |
| vs. | |
| TYRELL JARULE GASTON, | |
| Defendant. | |

———————————————

## I.    INTRODUCTION

This matter is before the Court on defendant's motion to suppress evidence of vehicle search.  (Doc. 20).  The government filed a timely resistance.  (Doc. 23). Following a hearing (Doc. 27), United States Magistrate Judge Mark A. Roberts recommended that this Court deny defendant's motion.  (Doc. 28).  Defendant timely filed his objections to Judge Roberts' report and recommendation ("R&R").  (Doc. 30).

For the following reasons, defendant's objections are sustained in part and overruled in part.  The Court adopts with modifications Judge Roberts' R&R, and denies defendant's motion to suppress.

## II.    STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

1

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

### III.    FACTUAL BACKGROUND[1]

On March 19, 2020, a complaint was filed against defendant in the Iowa District Court for Linn County, charging defendant with first degree robbery (Count 1), conspiracy to deliver marijuana (Count 2), carrying weapons (Count 3), and obstructing prosecution (Count 4). (Gov. Exhibit 1). The charges stemmed from a shooting that occurred on January 24, 2020. Defendant and Andrew Gaston, defendant's cousin, made plans to rob marijuana from a drug dealer, Kyler Carson. Defendant and Andrew Gaston, along with assistance from others, arranged to meet Carson in a parking lot, where

---

[1] After reviewing the hearing transcript (Doc. 29), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the R&R. The Court thus adopts with minor modifications Judge Roberts' summary of the facts here. Judge Roberts' citations to hearing testimony have been adjusted to reflect citations in the official transcript. Otherwise, the Court notes its modifications where made. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.

Carson expected to sell forty-five pre-rolled tubes of marijuana for $900. While Carson was engaged in selling the marijuana to other individuals, defendant, Andrew Gaston, and a third individual ambushed Carson from behind. Andrew Gaston struck Carson in the back of the head with a metal object. Carson turned and exchanged gunfire with defendant before fleeing the scene. Andrew Gaston was shot in the chest and died. Defendant was shot in the ankle. Both Carson and defendant discarded their firearms which were not recovered by law enforcement. (*Id.*, at 2).

On September 21, 2021, defendant was sentenced on the March 2020 charges and received a deferred judgment to a previously entered guilty plea to the lesser included offense charged in Count 1 of the complaint, second degree robbery. (Gov. Exhibit 2, at 1). Defendant was placed on probation under the supervision of the Sixth Judicial District until September 21, 2024. (*Id.*, at 2).

On October 12, 2021, defendant signed a "Probation Agreement" which contained multiple conditions he was required to follow while on probation. (Gov. Exhibit 3). Among other conditions, defendant affirmed that he understood and agreed that his "person, property, place of residence, vehicle and personal effects may be searched at any time, with or without a search warrant or warrant of arrest, by any probation officer having reasonable grounds to believe contraband is present." (*Id.*, at 1).

On November 8, 2021, a complaint was filed against defendant in the Iowa District Court for Linn County, charging defendant with first degree harassment (Count 1) and fifth degree criminal mischief (Count 2). (Gov. Exhibit 4). According to the complaint, on November 7, 2021, the victim reported to law enforcement that, during an argument regarding child visitation, defendant pointed a gun at her and threatened to assault her with it. Other witnesses stated they observed defendant brandish the gun, rack the slide,

3

and break a window at the residence. Later, law enforcement located a black Ruger handgun in the vehicle defendant used to leave the scene.[2] (*Id.* at 1).

On November 9, 2021, a complaint was filed against defendant in the Iowa District Court for Linn County, charging defendant with attempted murder (Counts 1 and 2), intimidation with a dangerous weapon (Count 3), and going armed with intent (Count 4). (Gov. Exhibit 5). The complaint alleged that, on November 2, 2021, while Cornelius Gaston, defendant's uncle, was dropping Nickolas Palmer off at Palmer's residence, defendant and Earnest Gaston, defendant's father, pulled up in a vehicle and stopped. Cornelius Gaston told law enforcement that he heard Earnest Gaston yell, "kill his ass." (*Id.*, at 2). Defendant exited the vehicle and opened fire on Cornelius Gaston and Palmer. Investigators found nine shell casings at the scene and observed a bullet hole in the vehicle driven by Cornelius Gaston. (*Id.*)

Defendant was held in custody until December 7, 2021, when he posted a $55,000 surety bond on the November 8 and 9, 2021 charges. (Gov. Exhibit 7, at 2). On December 14, 2021, Michael Stransky, State Probation Officer for Iowa's Sixth Judicial District Department of Correctional Services, took over defendant's probation supervision.

---

[2] Defendant objects to Judge Roberts' findings of fact as to this charge and the related conclusion in the R&R's analysis because the harassment case was dismissed with no finding of guilt on defendant's part. (Doc. 30, at 1). Indeed, the charge has since been dismissed as to defendant. (Doc. 29, at 22). But what is pertinent to the Court's analysis here is what information was available to the officers at the time of the truck search, when the attempted murder and harassment charges were pending. Accordingly, the Court considers the complaint known to the officers but does not conclude that defendant committed the crime of first-degree harassment, brandished a firearm, or threatened to assault the alleged victim with it. The Court has made minor modifications to the factual findings here to clarify that the actions here were alleged, not found as fact. To the extent that Judge Roberts' factual findings implied a finding of guilt, defendant's objection is sustained.

On April 29, 2022, Officer Stransky received an email from a Cedar Rapids Police Department ("CRPD") criminal analyst, who, in connection with a shooting that occurred on April 10, 2022, was reviewing surveillance footage from cameras at the Taboo Nightclub in Cedar Rapids and observed defendant at the nightclub in the bar area and on the dance floor at approximately 11:30 p.m. on April 9, 2022. (Doc. 29, at 10-11). Officer Stransky reviewed the photos attached to the email sent by the CRPD and confirmed that defendant was at the bar at 11:30 p.m., which was past his 10:30 p.m. curfew. Officer Stransky determined that both being at the bar and being out past his curfew were probation violations which gave grounds for defendant's arrest. (*Id.*, at 11-12). There was no information that defendant was a suspect in the nightclub shooting, that defendant was armed, or drinking while present there. (*Id.*, at 17-19). Officer Stransky contacted the High Risk Unit to assist with taking defendant into custody. (*Id.*, at 13).

High Risk Unit Officer Steven Warner was instrumental in defendant's arrest on April 29, 2022.[3] Officer Warner went to Officer Stranksy's office, where defendant had already arrived. Officer Warner informed defendant that he was being placed under arrest for probation violations. Defendant was searched incident to arrest. As part of the pat down search, Officer Warner learned that defendant had an injury to his back. Defendant explained that he had a cyst removed from his back which required his back to be bandaged up. Officer Warner also found a set of keys to defendant's truck[4] in defendant's pocket. (*Id.*, at 32-33).

_____

[3] Officer Warner has been a probation officer for Iowa's Sixth Judicial District Department of Correctional Services for 31 years and has been a High Risk Unit Officer for 20 years. He is a graduate of the Iowa Law Enforcement Academy.

[4] It is undisputed that defendant has standing to challenge the search of his truck. *See, e.g.*, *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000) (listing factors relevant to determination of standing).

5

Officer Warner testified that, because defendant was cooperative and had driven himself to the probation office, he gave defendant the opportunity to make arrangements for a family member or friend to pick up the truck. (*Id.*, at 33). Officer Warner also asked defendant whether there was anything in the truck that would get him into trouble. Defendant immediately answered "No," but stated that there was a backpack in the truck that belonged to his brother. (*Id.*, at 33-34). Officer Warner testified that defendant's immediate response suggested to him that defendant wanted to distance himself from the backpack and gave Officer Warner reason to believe that there was something in the backpack that defendant did not want found. (*Id.*). Based on his experience as a High Risk Unit officer and his 30 years of probation experience, Officer Warner determined that based on the probation agreement, which provided that, among other things, defendant's vehicle could be searched without a search warrant if a probation officer has reasonable grounds to believe contraband is present,[5] and defendant's response regarding the backpack, he was going to search the truck.[6] (*Id.*, at 33-34, 36).

Officer Stransky also testified to law enforcement's determination to search defendant's truck. Officer Stransky indicated that both he and Officer Warner determined it was appropriate to search defendant's truck based on defendant's probation violations and criminal history involving firearms.[7] (*Id.*, at 25). Specifically, Officer Stransky

---

[5] Defendant objected that Judge Roberts' statement of the search condition was incomplete. (Doc. 30, at 1). The Court has modified the language to reflect the search condition in its entirety. To the extent that Judge Roberts' factual finding did not provide the complete condition, the Court sustains defendant's objection.

[6] Officer Warner also testified that he was aware that defendant was on probation for a robbery charge involving firearms, and where a death occurred. Officer Warner also stated that Officer Stransky told him that defendant was on pretrial release for attempted murder and that defendant had allegedly "shot up" a vehicle. (Doc. 28, at 36).

[7] In his testimony, Officer Warner stated that he made no decision to search defendant's truck until he found the keys to the truck in defendant's pocket. (Doc. 28, at 37). Officer Warner

6

stated that, "When we went out to the vehicle, our intention was to search the vehicle. If it would have had a backpack in it or whatever was in it, we intended to search the vehicle under the circumstances." (*Id.*, at 29-30). Further, Officer Stransky indicated that whether or not defendant had mentioned the backpack in the truck, the vehicle would have been searched. (*Id.*, at 30).

Prior to searching the vehicle, Officer Warner ran the truck's license plate and confirmed that defendant was the owner of the truck. Officer Warner unlocked the vehicle and found the backpack sitting on the front passenger seat. Inside the backpack, Officer Warner found a pair of pants, a shirt, prescription ibuprofen prescribed to defendant, bandages consistent with the bandages on defendant's back, a book, a hotel room card, and a 9mm handgun with a loaded extended magazine. (*Id.*, at 34-35).

## IV.    ANALYSIS

Defendant moved to suppress the evidence obtained based from the search of his truck and the backpack inside it, arguing that officers violated his Fourth Amendment rights. (Docs. 20 & 20-1). The government resisted, arguing that Officer Warner and other officers had reasonable suspicion to search based on defendant's criminal history, the circumstances of the arrest, and defendant's statements, among other reasons. (Docs. 23 & 23-1).

Judge Roberts recommended that the Court deny defendant's motion to suppress. (Doc. 28). Judge Roberts found Officer Warner had reasonable grounds to believe that contraband would be present in the truck,[8] thus making the search in keeping with

---

further testified that, upon finding the keys, he asked defendant several questions, including whether there was anything in the truck that would get him in trouble and defendant's quick response that the backpack in the truck belonged to his brother was a red flag to him that he needed to search the vehicle. (*Id.*, at 33-34, 36, 39-40).

[8] In so doing, Judge Roberts noted that, in reference to the language of the probation agreement "reasonable grounds to believe contraband is present," neither party asserted that "reasonable

Case 1:22-cr-00044-CJW-MAR   Document 31   Filed 04/28/23   Page 7 of 16

defendant's probation search condition. (*Id.*, at 12). Judge Roberts cited "Officer Warner's 30 years' experience as a probation officer, including 20 years' experience as a High Risk Unit officer, and the totality of the circumstances known to Officer Warner at the time of the search," as well as the circumstances leading up to the search, as the basis for Officer Warner's reasonable grounds to search. (*Id.*, at 10-12). In reaching this conclusion, Judge Roberts noted "[t]he witnesses' testimony is not entirely consistent regarding who made the decision to search and when the decision was made." (*Id.*, at 11). Judge Roberts found Officer Warner's explanation of the decision-making process more consistent with the evidence, particularly given the roles of the officers. (*Id.*).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search is reasonable "only if it falls within a specific exception to the warrant requirement." *United States v. Rodriquez*, 829 F.3d 960, 961 (8th Cir. 2016) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)). A warrantless search subject to a condition of probation is one such exception. *See United States v. Knights*, 534 U.S. 112, 121-22 (2001). "The Fourth Amendment's touchstone is reasonableness, and a search's reasonableness is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed to promote legitimate governmental interests." *Id.*, at 112-13.

Because an individual subject to conditions of probation has a diminished expectation of privacy, a probationer has limited Fourth Amendment rights. *Ryno v. City of Waynesville*, 58 F.4th 995, 1007 (8th Cir. 2023 (citing *Griffin v. Wisconsin*, 483 U.S.

---

grounds" meant anything more or less than "reasonable suspicion," as discussed by both parties in their briefing. (Doc. 28, at 10 (citing Def. Exhibit A)). The Court agrees and, as Judge Roberts did, applies the reasonable suspicion standard here.

868, 873-74 (1987)). "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *United States v. McCoy*, 847 F.3d 601, 605 (8th Cir. 2017) (quoting *Knights*, 534 U.S. at 121).

In determining reasonable suspicion, probation officers may consider: (1) the detail and consistency of information suggesting the presence of contraband; (2) information provided by the probationer relevant to whether they possess contraband; and (3) the probation officer's experience with the probationer or experience in a similar circumstance. *Id.*, at 605 (citing *Griffin*, 483 U.S. at 878-79). "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010).

Defendant objects to Judge Roberts' recommendation to deny his motion to suppress, asserting that the evidence before the Court does not show the officers had reasonable grounds to believe contraband was present in defendant's truck. (Doc. 30). Defendant objects to Judge Roberts' conclusion that Officer Warner's explanation of the decision-making process to search defendant's truck was more consistent than the explanation provided by Officer Stransky, defendant's supervising probation officer. (*Id.*, at 2). Defendant also objects to Judge Roberts' conclusion that Officer Warner had reasonable grounds to believe contraband would be present in defendant's truck. (*Id.*, at 2-3). For the following reasons, the Court overrules these objections. The Court addresses each objection in turn.

### A. *Whether the Court Should Rely on Officer Warner's Explanation*

Defendant objects to Judge Roberts' conclusion that Officer Warner's explanation of the decision-making process to search defendant's truck was more consistent than the

9

explanation provided by Officer Stransky, defendant's supervising probation officer. (Doc. 30, at 2). Defendant argues that Officer Stransky "was part of the decision to search the truck," citing Officer Stransky's role in assessing the circumstances when defendant arrived for his appointment, his role determining defendant should be arrested and contacting Officer Warner to effectuate that arrest, and his presence during Officer Warner's discussion with defendant in Officer Stransky's office. (*Id.*).

The Court agrees with Judge Roberts' conclusion that Officer Warner's explanation was more consistent with the evidence than Officer Stransky's explanation, and thus the Court's reliance on Officer Warner's explanation is appropriate.

As defendant's supervising probation officer, Officer Stransky made the decision to arrest defendant and called the High Risk Unit to assist with the arrest. When the High Risk Unit responded, Officer Warner arrested defendant. To be sure, defendant would not have been arrested without Officer Stransky; but this does not mean Officer Stransky made the decision to search defendant's truck, such that his interpretation of the circumstances should govern whether reasonable grounds existed to search it. Viewing the testimony and evidence as a whole, Officer Stransky's assessment of the circumstances was relevant to the decision to have defendant arrested, but was not relevant to Officer Warner's decision to search defendant's truck after patting defendant down, finding the keys to defendant's truck, and inquiring about what items might be found in the truck.

Officer Stransky's testimony supports that Officer Warner was the officer taking the lead on defendant's arrest and, subsequently, the search of defendant's truck. According to Officer Stransky, Officer Warner was the person speaking with defendant as he was being arrested and "uniform officers," including Officer Warner, searched the car. Officer Warner's testimony and report support this. Accordingly, the Court agrees with Judge Roberts' conclusion that "after his arrival, Officer Warner seems to have

taken the lead in questioning [d]efendant, making the decision to search the vehicle, and in conducting the search itself." (Doc. 28, at 11). The Court also agrees that Officer Warner's leadership role in instituting and effectuating the search is consistent with "Officer Warner's testimony that he made the decision to institute the search based on his assessment there was reasonable grounds to believe contraband was present after he located [d]efendant's key fob and heard [d]efendant's statement attempting to disassociate himself from the backpack." (*Id.*, at 11-12).

Having found reliance on Officer Warner's explanation is appropriate, the Court continues with its analysis and addresses the question of whether reasonable grounds existed to believe officers would find contraband in defendant's truck.

### B. *Whether Reasonable Grounds Existed*

Defendant also objects to Judge Roberts' conclusion that Officer Warner had reasonable grounds to believe contraband would be present in his vehicle. (Doc. 30, at 2-3). In support of this objection, defendant argues: (1) his prior criminal history involving firearms was dated; (2) Officer Stransky testified defendant had been doing well on probation; (3) defendant was being arrested only for a curfew violation and for being in a bar; and (4) officers had no information that defendant possessed a firearm while at Taboo Nightclub, that he was drinking while there, or that he was present at the time of the shooting.[9] (*Id.*). Defendant further argues that the fact the keys to his truck were found on his person and his statement about a backpack do not provide reasonable grounds to believe contraband would be present. (*Id.*, at 3). In support, defendant asserts there was nothing suspicious or illegal about his driving his truck to his appointment with Officer Stransky and points to Officer Warner's testimony that there was nothing unusual

---

[9] Defendant also objects to two factual findings made by Judge Roberts in his R&R. The Court has addressed these objections in the factual background section.

about defendant wanting someone to come get his truck once he found out he was being arrested. (*Id.*). Defendant also asserts that reliance on his statement about a backpack as a source for reasonable grounds to believe contraband was present is inconsistent with the evidence before the Court. (*Id.*). Defendant points to Officer Warner's report which does not say he thought defendant's statement about the backpack was a "red flag," though Officer Warner testified as much in the hearing.[10] (*Id.*).

The Court agrees with Judge Roberts' conclusion that Officer Warner had reasonable grounds to believe contraband was present in defendant's truck and thus could lawfully search it. Prior to speaking with defendant, Officer Warner spoke with Officer Stransky about defendant and reviewed certain information about defendant. (Doc. 29, at 36). Officer Warner was aware of the crime for which defendant was on probation: "a robbery, in which guns were involved and a death occurred." (*Id.*). Officer Warner was also aware that defendant was on pretrial release at the time for an attempted murder charge "where he allegedly shot up a vehicle." (*Id.*). Defendant argues that his prior criminal history was "dated," (Doc. 30, at 2), but the robbery occurred two years before the truck search and the alleged attempted murder occurred just five months prior. The Court does not find these instances to be remote.

Officer Warner was aware that Officer Stransky was calling him—a member of the High Risk Unit—to arrest defendant. That Officer Stransky believed defendant was performing well on probation is inconsequential because neither Officer Stransky nor Officer Warner testified that Officer Stransky communicated this to Officer Warner. Officer Warner knew that defendant's arrest was based on defendant's violations of his probation by being at Taboo Nightclub on the night of a shooting. (*Id.*, at 32). Officer

---

[10] Defendant also points to Officer Stransky's testimony that the truck was going to be searched regardless of any statements about a backpack. (Doc. 30, at 3). But the Court has already found that Officer Warner's explanation is more consistent with the evidence and thus found it more reliable than Officer Stransky's explanation.

Warner did not know when defendant left the nightclub and the security footage that placed defendant there did not show that he possessed a gun or was drinking alcohol. (*See id.*, at 38). But Officer Warner's assessment was made based on all the information available to him. Officer Warner knew that two people had died from gunshot wounds the night defendant was present at the nightclub. (*Id.*, at 37). Though defendant was not suspected to have shot anyone at the nightclub, Officer Warner also knew that multiple people in the nightclub that night were armed. (*Id.*). And Officer Warner knew that defendant was on probation for a violent crime in which he was reported to have possessed and used a gun and, at the time of defendant's arrest here, defendant was charged with attempting to murder someone with a gun.

When Officer Warner told defendant he was under arrest and patted him down, Officer Warner found defendant's keys on his person. (*Id.*, at 32-33). When Officer Warner asked defendant if there was anything in defendant's truck that would get defendant in trouble, defendant responded: "No, but there's a backpack I picked up of my brother's." (*Id.*, at 33). Drawing on his training and experience with searching probationers, Officer Warner viewed this statement as defendant's attempt to distance himself from the backpack and anything inside it, which Officer Warner testified "gave [him] the reason to believe there was something in the backpack that [defendant] didn't want [Officer Warner] to find." (*Id.*, at 33-34).

Officer Warner testified defendant's statement about the backpack was the tipping point after which he decided to search defendant's truck. (*Id.*, at 36, 40). Though Officer Warner mentioned the discovery of defendant's keys as a crucial development, (*Id.*, at 37), Officer Warner repeatedly returned to defendant's statement about the backpack as the reason he decided to search defendant's truck. To the extent that Officer Warner relied on the keys to the truck being on defendant's person, (*See* Doc. 30, at 3 (describing testimony)), the Court finds Officer Warner's discussion of the keys is consistent with

his statement that defendant's statement about the backpack caused him to search the truck; Officer Warner's discovery of the keys gave him the opportunity to question defendant about the truck, which in turn resulted in the statement about the backpack.

Considering Officer Warner's testimony and his report, the Court finds Officer Warner had reasonable suspicion to believe there was contraband in defendant's truck. The detail and consistency of information known by Officer Warner suggested that there might be a gun or other contraband in defendant's vehicle. *See McCoy*, 847 F.3d at 605. Officer Warner knew defendant was convicted of a violent robbery involving firearms and a death, and was on probation for that crime. Officer Warner knew defendant was currently on pretrial release for an attempted murder charge, and was alleged to have shot up a car. Defendant's robbery conviction and attempted murder charge have firearms in common. The nightclub shooting also involved firearms and defendant was at the nightclub the night of the shootings. That defendant was seen on camera hours prior to the shootings and was not seen to possess a firearm is relevant, but it does not negate reasonable suspicion that defendant possessed a firearm based on other information and circumstances.

Defendant's statement about the backpack also supported a reasonable suspicion that there was contraband in the backpack. *See McCoy*, 847 F.3d at 605. Because defendant's statement that there was nothing in his truck that would get him in trouble was immediately followed by a statement about picking up his brother's backpack, it was reasonable for Officer Warner to believe that defendant was linking the backpack with something that could get him in trouble. In other words, the juxtaposition of the question and answer would lead a reasonable officer to conclude that defendant was implying that the truck did not contain anything that may get him in trouble, but the backpack did. And though Officer Warner testified there was nothing unusual about a probationer wanting someone to come get the car, he testified the statement about the backpack—not

14

defendant's statement about his family coming to get the truck—was the tipping point in his decision to search. (Doc. 29, at 33-34, 39).

Further, based on Officer Warner's experience in similar circumstances, defendant's statement was an effort by defendant to distance himself from whatever was inside the backpack. *McCoy*, 847 F.3d at 605. That Officer Warner did not expressly identify defendant's statement as a "red flag" in his report does not mean Officer Warner did not interpret it as such. In his report, Officer Warner states in one sentence that defendant made the statement about the backpack in his truck and in the next sentence references the search condition in defendant's Probation Agreement. (Def. Exhibit B, at 2). This proximity supports Officer Warner's testimony that defendant's statement about the backpack directly led to Officer Warner's decision to search the truck.

Officer Warner properly considered the information known to him, defendant's statement, and his experience in determining whether reasonable grounds existed to believe contraband was present in defendant's truck. The Court finds these considerations collectively provide a particularized and objective basis for Officer Warner's belief that defendant's truck would contain contraband. Thus, the Court finds Officer Warner had reasonable suspicion to search defendant's truck under the condition in defendant's Probation Agreement. For this reason, the Court denies defendant's motion to suppress.[11]

---

[11] Judge Roberts found "Officer Stransky's lack of consideration of the backpack is not fatal to the finding of reasonable suspicion," citing the collective knowledge doctrine in support. (Doc. 30, at 12-13 (citing *United States v. Edwards*, 891 F.3d 708, 711-12 (8th Cir. 2018)). Defendant did not mention collective knowledge in his objections. Here, the Court need not reach the issue of collective knowledge because Officer Warner—the officer effectuating the arrest and leading the search—had a particularized and objective basis to search.

## V.    CONCLUSION

For the reasons stated above, defendant's objections are sustained in part and overruled in part.   The Court **adopts with modifications** Judge Roberts' Report and Recommendation (Doc. 28) and **denies** defendant's Motion to Suppress (Doc. 20).

**IT IS SO ORDERED** this 28th day of April, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa